UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHERYL A. BEARDSLEY, <br><br>    Plaintiff; <br><br>    v. <br><br> MICHAEL J. ASTRUE <br> Commissioner of Social Security, <br><br>    Defendant. | Civil Action No. 1:12-CV-75 JVB |

**OPINION AND ORDER**

Plaintiff Cheryl A. Beardsley seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied her application for Disability Insurance Benefits and Supplemental Security Income. For the following reasons, this Court affirms the decision of the Commissioner.

**A. PROCEDURAL BACKGROUND**

Plaintiff filed her application on October 6, 2009, for Disability Insurance Benefits, and Supplemental Security Income disability, alleging that her disability began on November 1, 2008. (R. at 167.) Her claims were denied initially and on reconsideration. (*Id*.) Plaintiff requested a hearing which was held before an Administrative Law Judge (ALJ) on September 30, 2010. (R. at 30–63.) Plaintiff and a vocational expert testified at the hearing. On February 23, 2011, the ALJ determined that Plaintiff was not disabled because she could still work at jobs that

1

existed "in significant numbers in the national economy." (R. at 25.) The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on December 20, 2011. (R. at 5–7.)

### B. FACTUAL BACKGROUND

#### 1. *Plaintiff's Background and Testimony*

Plaintiff was 51 years old on the date of the ALJ's decision. (R. at 167.) She earned a high school degree by taking special education classes. (R. at 189.) After graduating high school in 1978 she has worked as a cashier, inspector, assembly line operator, and machine operator. (R. at 37–38, 245, 253.) Since being laid off from her job as a machine operator in 2007, she has not looked for work. (R. at 38.)

In February 2009, Plaintiff started taking care of her 75 year old mother 40 hours a week Monday through Friday. (R. at 35, 53.) Her tasks included preparing meals, doing chores, socializing with her mom, taking care of pets, running errands, and helping her mom get in and out of bed. (R. at 36, 53, 207, 217–20.)

In her testimony, Plaintiff described her chronic knee pain. She explained that her knee pain averaged a 5 or 6 on a scale of 1 to 10. (R. at 45.) She reported that she could barely walk 100 feet across the parking lot to the ALJ hearing and could only sit for 10 to 15 minutes and stand for 5 to 10 minutes. (R. at 46–47.) She also described how wrist pain forced her to wear splints while she was working. (R. at 52.) Finally, she testified about her mental health problems including anxiety, trouble concentrating on tasks, and sleeping. (R. at 50.)

## 2. *Medical Evidence*

Plaintiff has a history of both physical and mental health issues. Her physical problems include injuries to her knee and some discomfort in her wrist. Her knee problems began in July 2008, when she was diagnosed with a left knee sprain after slipping at a grocery store. (R. at 276–77.) When the pain persisted, an MRI revealed that she had tears in her meniscus and an ACL rupture. (R. at 262.) An orthopedic surgeon offered to perform arthroscopic surgery to fix the tears, but Plaintiff decided it was not worth the risk. (R. at 356.) For about a year, she reported no new problems with her knee. (R. at 266, 355.)

Then on August 19, 2009, Plaintiff reported increasing pain and an x-ray revealed worsening osteoarthritis. (R. at 354.) She still declined surgery and opted for Synvisc injections. (R. at 353.) The injections reduced the pain and by the end of the year she was "happy to get along with her symptoms." (R. at 294.)

Plaintiff self-reported numbness in her hands when she visited a free clinic on August 19, 2010. (R. at 358.) The clinic did a Tinel's test,[1] which came back negative, and a Phalen's test[2] which came back questionably positive. (*Id.*)

As Plaintiff began her disability application, she received a comprehensive physical examination from Dr. Larry Banyash on January 16, 2010, at the request of the State of Indiana. (R. at 296–301.) Dr. Banyash found that her knee problems limited her to sedentary work and restricted her climbing, squatting, stair climbing, standing, and walking. (R. at 300–01.) The rest

---

[1] Tinel's sign is positive when there is a tingling sensation in the distal end of a limb after the top of a divided nerve (i.e., a wrist) is tapped. *Dorland's Illustrated Medical Dictionary* 1644 (Saunders, 29th ed. 2000).
[2] The Phalen's (or wrist extension) test is positive when one or more symptoms, such as tingling or numbness, is felt in the fingers within one minute of the wrist flexion. *See Carpal Tunnel Syndrome Fact Sheet*, National Institute of Neurological Disorders and Stroke *at:*
http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm#220823049 (last visited July 8, 2013).

of Plaintiff's body had normal range of motion except for a minor limitation in her right wrist. (R. at 300.) State reviewing physician Dr. M. Brill examined Dr. Banyash's report along with the entire medical record. He concluded that Plaintiff could perform light work that involved sitting, standing, and walking about 6 hours in an 8 hour workday. (R. at 307.)

Plaintiff's mental problems include depression, panic attacks, and anxiety. She began taking Hydrocholorothiazide for hypertension, Sertraline for depression, and Buspar for anxiety disorder in March 2008. (R. at 289–90.) She currently takes Paxil, Buspar, Glucosamine, and Hydrochlorothiazide. (R. at 39.)

At the request of the State, Plaintiff was psychologically evaluated in 2010 by Dr. Patrick Utz. He diagnosed her with a mild to moderate depressive disorder and occasional panic attacks. He determined her mental problems were mild and assigned her a GAF score of 65+.[3] (R. at 317.) A State examiner, Dr. Ken Lovko, affirmed Dr. Utz's analysis and indicated his belief that Plaintiff could still perform a wide range of activities. (R. at 331.)

3. *Vocational Expert's Testimony*

The ALJ posed only one hypothetical to the Vocational Expert (VE). The ALJ asked the VE to consider a person who would not be able to perform work involving a "close regimentation of production," "intense contact with the public, or strangers," or stand "for more than 75% of an eight hour work day." (R. at 55–56.) The work could not require walking or standing for longer

---

[3] The GAF includes a scale ranging from 0 to 100, and is a measure of an individual's "psychological, social, and occupational functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000). A GAF score of 61 to 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

than 30 minutes or lifting more than 20 pounds occasionally or 10 pounds frequently. (R. at 56.) Finally, she could not "reach extreme posture, stoop, bend, or kneel more than occasionally." (*Id.*)

The VE stated that this hypothetical person would not be able to perform any of Plaintiff's past work. (*Id.*) Such a person, however, could be an assembler, inspector, or surveillance system monitor. (R. at 56–57.)

### 4. *ALJ's Decision*

The ALJ concluded that the claimant was not disabled. (R. at 14.) The ALJ found that Plantiff did suffer from the following severe impairments as listed in 20 C.F.R. § 404.1520(c) and 415.920(c): chronic knee pain; depression; personality disorder; anxiety; and obesity. (R. at 16.) Although severe, none of these impairments medically equaled one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. (R. at 17.)

The ALJ further found that Plaintiff had not engaged in substantial gainful activity since November 1, 2008, the date she claimed to be disabled. (R. at 16.) However, the ALJ did find that Plaintiff could perform "less than the full range of light work . . . as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)." (R. at 18.) As a result, the ALJ concluded that there were "jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (R. at 24.)

### C. STANDARD OF REVIEW

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). This Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The ALJ must "sufficiently articulate" his "assessment" of the testimonial and medical evidence in the record to assure this Court that he "considered the important evidence" about Plaintiff's physical and mental condition. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999). This Court looks for an "accurate and logical bridge from the evidence" to the ALJ's conclusion "so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

### D. DISABILITY STANDARD

To qualify for Disability Income Benefits or Supplemental Security Income, the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social

Security Administration has established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

E. ANALYSIS

Plaintiff asserts two primary issues on appeal: (1) Whether the ALJ legally erred by dismissing her allegations of carpal tunnel syndrome. (2) Whether the ALJ's residual functional capacity assessment (RFC) is supported by substantial evidence.

1. *The ALJ Did Not Legally Err in Evaluating Plaintiff's Wrist Impairment*

Plaintiff argues that the ALJ erred by finding that her wrist limitations were not severe and by ignoring those limitations in determining her RFC.

An impairment "is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). An impairment is not a "significant

limit" if it only has a "minimal effect on an individual's ability to do basic work activities." SSR 96-3P, 1996 WL 374181, (July 2, 1996). Neither Plaintiff's testimony nor the record establishes a severe impairment.

Plaintiff's testimony about her wrist only described pain at her last job in 2007. (R. at 52.) However, nothing about that testimony indicated that her wrist problems were severe. She acknowledged that she continued to work with the aid of a wrist splint and was only let go for business reasons. (R. at 17.) Her testimony did not describe the current condition of her wrist.

The objective medical record contains little evidence of wrist problems. Plaintiff points to Dr. Banyash's report, which documented limited range of motion in Plaintiff's right wrist. (R. at 302.) Dr. Brill also noted this limitation after reviewing Dr. Banyash's findings. (R. at 307.) This is the only evidence of limited wrist movement in the record. However, other parts of the record mitigate the significance of this evidence. Dr. Banyash's report found that Plaintiff's range of motion for all of her upper extremity joints was normal. (R. at 299–300.) Her gross motor abilities and hand strength were also normal. (R. at 299.) The tests at the free clinic also failed to establish any wrist problems. (R. at 358.)

The ALJ's failure to consider Plaintiff's wrist limitations was in error. The ALJ is required to consider all "limitations . . . imposed by all of an individual's impairments." SSR 96-8P, 1996 WL 374181, (July 2, 1996). However, this error is harmless because there is no evidence that Plaintiff's wrist limited her work more than stated in the ALJ's RFC. When her wrist bothered her at her most recent job, she was able to continue working with the aid of the wrist splint.

**2.** *The ALJ's RFC is Supported by Substantial Evidence*

An RFC is an assessment of the most work an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). This assessment must be based on all "relevant evidence" in the case record. *Id.*

The ALJ restricted Plaintiff to an RFC of performing less than a full range of light work. (R. at 18.) Plaintiff however argues that the substantial weight of the evidence supports an RFC limiting Plaintiff to sedentary work.

Light work is defined by 20 C.F.R. § 404.1567. The ALJ found that Plaintiff could not perform the full range of light work. Instead, he found that she could only work in jobs that allowed her to stand or walk up to 6 hours with no prolonged standing longer than 30 minutes with occasional postural limitations. Additionally, her job could not require her to lift more than 10 pounds frequently and 20 pounds occasionally. She also needed "the opportunity to sit or stand while working." She could not have "intense contact with the public or strangers," work in hazardous conditions, or work in an environment that imposed a close regimentation of production. (R. at 18–19.)

The ALJ used the following evidence to support his RFC:

> (a) the claimant's description of her care for her mother; (b) the claimant's own statements of her capabilities; (c) the opinion of Dr. Brill; (d) the benign objective medical findings; (e) the conservative medical treatment; (f) the effectiveness of the claimant's medication; and (g) the lack of restrictions or limitations opined by the claimant's treating physicians.

(R. at 24.)

Plaintiff attacks the RFC by challenging each piece of evidence. And that is where the Court turns next.

(a) *Plaintiff's Care for Her Mother*

Plaintiff argues that the ALJ placed undue weight on Plantiff's care for her mother by equating it with substantial gainful activities. However, she never disputes any of the specific facts cited by the ALJ in his opinion, nor does she allege that the ALJ mischaracterized the amount of care Plaintiff gave. The ALJ appropriately used those activities as one factor among many in evaluating Plaintiff's credibility and her RFC as allowed by 20 C.F.R. § 404.1529(c)(i). (R. at 23.) The opinion shows that the ALJ gave proper weight to Plaintiff's care for her mother.

(b) *Plaintiff's Testimony*

Plaintiff submits the ALJ ignored parts of her testimony that did not support his RFC. However, the ALJ specifically referenced her self-reported limitations of her physical and mental abilities. These included sitting for 10 to 15 minutes, standing for only 5 to 10 minutes, difficulty getting in and out of chairs and lifting more than 10 pounds. (R. at 20.) The ALJ weighed this testimony against the objective medical evidence from doctors and Plaintiff's own statements about her care for her mother. (R. at 23.) He then concluded that Plaintiff's self-assessment was not credible and gave greater weight to the medical reports of the doctors who evaluated Plaintiff's medical records.

(c) *The Opinion of Dr. Brill*

The ALJ explained that he gave Dr. Brill's opinion "great weight" because it was "consistent with the record as a whole." (R. at 23.) He only gave Dr. Banyash's opinion "some weight"

because "it does not appear [to] consider[] the extent of the activities the claimant performs for her mother on a daily basis." (*Id.*)

Plaintiff argues that Dr. Brill's report should be given less weight because it incorrectly stated that Plaintiff did not allege physical impairments in her disability application. Second, Plaintiff argues that the ALJ's conclusion that Dr. Banyash did not appear to consider the extent of Plaintiff's care for her mother was an unsupported assumption.

In determining the weight to give to medical opinions, the ALJ must follow the criteria in 20 C.F.R. § 404.1527(c), which ordinarily requires the ALJ to give greater weight to the examining physician. An ALJ must provide "reasons supported by substantial evidence in the record" for rejecting the examining physician's opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The ALJ's conclusion that Dr. Banyash did not consider the full extent of Plaintiff's activities is supported by the record. Dr. Banyash only noted specific chores that Plaintiff reported when making a self-report about her functional capacity. (R. at 296.) Dr. Brill on the other hand had access to the entire medical record and could see Plaintiff's statements about the care she gave her mom. Additionally, Dr. Brill correctly noted that Plaintiff never described any physical limitations in her initial disability application. She only described mental impairments such as depression, panic attacks, and anxiety disorder. (R. at 184.) For these reasons, substantial evidence from the record supports the ALJ's explanation for why he gave Dr. Brill's report greater weight than Dr. Banyash.

(d) *Benign Objective Medical Findings*

Plaintiff argues the diagnosis of an ACL rupture, meniscal tears, and osteoarthritis contradicts the ALJ's conclusion that only benign objective findings existed in the medical record. The ALJ noted all these findings in his opinion but concluded that the lack of swelling, redness, or skin change and the full range of motion in Plaintiff's knee mitigated the symptoms of the ligament tears. (R. at 21–22.) The ALJ's conclusion is not contradicted by Plaintiff's diagnosed physical impairments.

(e) *Conservative Course of Treatment*

Plaintiff argues that the ALJ ignored the orthopedic surgeon's recommendation of surgery in coming to his conclusion that she only pursued a conservative course of treatment. This is not true. The ALJ specifically noted that Plaintiff rejected surgery because "she was not bothered enough" by her knee problems to take the surgery risk. (R. at 22.) Later she received three Synvisc injections and reported that she was "happy to get along with her symptoms." (R. at 352.) The ALJ's conclusion that Plaintiff pursued a conservative course of treatment is supported by substantial evidence.

(f) *Effectiveness of Plaintiff's Medication*

Plaintiff argues that her medication is no longer effective. However, the ALJ came to a different conclusion after examining medical reports that documented the effectiveness of her medication. (R. at 22.) The ALJ qualified his assessment of the medications' effectiveness by

12

noting that they did not cure all of Plaintiff's problems. (*Id*.) The ALJ's conclusion is supported by substantial evidence from the record.

(g) *Lack of Restrictions on Plaintiff's Activities by Treating Physicians*

Plaintiff argues that there was no reason for her treating physicians to place any restrictions on her activities because she has not worked since 2007. The Commissioner responds that her treating physicians would normally prescribe limitations to prevent symptoms from getting worse. The Commissioner's argument is more reasonable. The lack of restrictions by Plaintiff's physicians supports the ALJ's RFC.

(h) *Evidence of Deterioration of Plaintiff's Medical Condition*

Plaintiff objects to the ALJ's observation that "there is no evidence of a significant deterioration in the claimant's medical condition" since her layoff in 2007. (R. at 21.) She argues that the ALJ inferred "that the claimant's impairments would not prevent the performance of" her last job in 2007 even though the vocational expert testified that Plaintiff could not work any of her prior jobs. (*Id*.)

Plaintiff correctly points out that the ALJ gave contradictory statements about Plaintiff's current ability to perform her prior job. However, the ALJ ultimately agreed with the vocational expert's analysis that Plaintiff could not work any of her prior jobs when creating her RFC. (R. at 56.) As a result, any error from these contradictory statements is harmless since it did not affect the ALJ's RFC.

**F. CONCLUSION**

The Court finds that the ALJ did not err in his assessment of Plaintiff's wrist limitations or his finding that she was capable of less than light work. Therefore, the Court affirms Commissioner's denial of Plaintiff's Disability Insurance Benefits and Supplemental Security Income.

SO ORDERED on September 23, 2013.

      s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE